ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2010 JUL -6  PM 2: 45

DEPUTY CLERK _____

| | | |
|---|---|---|
| MOTT'S LLP | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| UNITED FOOD AND COMMERCIAL | ) | |
| WORKERS INTERNATIONAL UNION, | ) | |
| VARIOUS JOHN DOES, JANE DOES AND | ) | |
| ABC COMPANIES | ) | **3-10CV1315-P** |
| | ) | |
| *Defendants.* | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER

NOW COMES MOTT'S LLP ("Mott's") and files this its Memorandum of Law In

Support of Application for Temporary Restraining Order and respectfully shows the Court as

follows:

# I.
## INTRODUCTION

1.       Mott's is seeking a temporary restraining order to stop the actions of Defendant

United Food and Commercial Workers International Union ("UFCW") and Various John Does

and Jane Does and ABC Companies, (whose identities are as yet unknown) (collectively

"Defendants") who are engaged in the following unlawful conduct:

• Actively encouraging the placement of labels on Mott's food and beverage

products being sold in retail stores;

---

- Publishing labels for the purpose of placement on Mott's food and beverage products being sold in retail stores;

- Placing labels on Mott's food and beverage products being sold in retail stores.

2.     Defendants' actions are unlawful in that, among other things, they dilute, tarnish and infringe upon Mott's trademark rights in its famous MOTT'S® trademark in violation of the Federal Trademark Act of 1946, 15 U.S.C. § 1051, *et seq.*, as amended (the "Lanham Act") and Tex. Bus & Com. Code § 16.29. Such dilution and infringement irreparably harms Mott's.

3.     Moreover, the placement of labels on top of and obscuring the Mott's label constitutes criminal acts in violation of Federal Anti-Tampering Laws, 18 USC § 1365, and Section 431.021 of the Texas Health and Safety Code.  Both of these laws prohibit tampering with or altering the labeling of food and beverage products sold at retail.   Thus, Defendants' actions are criminal in nature and pose a harm to the public, as well as irreparable harm to Mott's and must be enjoined now.

## II.
### RELEVANT FACTUAL BACKGROUND

4.     Mott's is the Plano-based manufacturer of the famous MOTT'S fruit juices and fruit sauces, under the famous MOTT'S ® trademark (the "Mark").   Mott's is particularly famous for its apple juice and apple sauce sold under the Mark.   Affidavit of James R. Trebilcock ("Trebilcock Aff.") ¶3.

5.     Since Mott's original predecessor in interest was founded in 1842, for over 160 years the MOTT'S brand has been marketed in the United States. Trebilcock Aff. ¶3. Over that time the Mark has become famous, and enjoys substantial fame, recognition and goodwill for its fruit juice and sauce products. Trebilcock Aff. ¶3.

6.      Mott's is the owner of several United States trademark registrations for the MOTT'S trademark for use in connection with fruit juices and sauces, including United States registration Nos. 0802371 and 0160454. Trebilcock Aff. ¶4 and Exhibit 1 thereto.

7.      Mott's invests substantial resources in advertising and promoting and creating labeling for its MOTT'S juices and sauces, so that consumers associate the MOTT'S mark, trade dress and labels with quality food and beverage products. Trebilcock Aff. ¶5. For example, in 2009, Mott's spent approximately $22 million in promoting Mott's products. Trebilcock Aff. ¶5. A substantial portion of that advertising spent promotes the trade dress of Mott's products which feature depictions of apples. Trebilcock Aff. ¶6 and Exhibit 2 thereto.

8.      Mott's maintains strict control over the nature and quality of merchandise, packaging and labeling bearing the Mark. Trebilcock Aff. ¶7. Fruit juices and fruit sauces produced and/or sold by Mott's and bearing the Mark have been advertised and sold throughout the United States and within the State of Texas and this District. Trebilcock Aff. ¶8. As a result of Mott's excellent reputation, extensive advertising and sales, and strict control of the nature and quality of Mott's fruit juices and sauces, the Mark and its packaging/trade dress have come to be associated by the purchasing public with food and beverage products of the highest quality, and have become distinctive in the minds of the purchasing public as designating food and beverages which originate from, are sponsored by, or are otherwise affiliated with Mott's. Trebilcock Aff. ¶9. For these reasons, the value of the Mark and trade dress to Mott's is incalculable. Trebilcock Aff. ¶10.

9.      Mott's valuable trademark rights, goodwill and brand reputation are currently being threatened by the acts of the UFCW and the other Defendants. Defendants are currently operating a web site at www.nobadapples.org (the "Site") on which Defendants are publishing

and distributing labels bearing the Mark to be placed on existing Mott's product in retail stores. Trebilcock Aff. ¶11, Exhibit 3. Defendants encourage individuals to enter into retail stores, take Mott's food and beverage products off of the shelf, affix the labels to Mott's food and beverage products on top of the existing labels on the product and return those products to the shelf. Trebilcock Aff. ¶11, Exhibit 4. Defendants have placed these labels on Mott's product. See Trebilcock Aff. ¶11, Exhibit 4. Further, the Site encourages individuals to take photos of their "work" and submit them to Defendants. Trebilcock Aff. ¶11, Exhibit 4. Finally, the Site encourages individuals to print off flyers, also containing the Mark, and place the flyers on grocery store shelves next to Mott's products. Trebilcock Aff. ¶11, Exhibit 5.

10.    In    addition,    a    recent    video    posted    to    You    Tube    at http://www.youtube.com/watch?v=Ta52hqt2oo0&feature=player_embedded depicts two (2) individuals entering a Safeway grocery store and placing the offending labels on Mott's products. Trebilcock Aff. ¶12.

### III.
### ARGUMENT

### MOTT'S IS ENTITLED TO A TEMPORARY RESTRAINING ORDER TO STOP DEFENDANTS' UNLAWFUL TAMPERING WITH MOTT'S PRODUCTS.

11.    There is no question that affixing labels to genuine Mott's products on top of the existing labels is causing and is likely to cause irreparable harm to Mott's, its goodwill, the Mark and trade dress. Trebilcock Aff. ¶13. As the owner of the Mark, Mott's has the absolute right to determine how its Mark is presented to the public in association with its products. Trebilcock Aff. ¶14.

---

4453641.3
31087.2226

12.     By affixing labels to Mott's products in retail outlets, Defendants are tarnishing the brand that Mott's and its predecessors in interest have built for over 160 years, and Mott's loses the ability to control how its product and labels appear to the relevant consuming public. Trebilcock Aff. ¶15.  This alone irreparably harms Mott's.  Further, the alteration of a label for food and beverage products sold at retail is product tampering in violation of federal and state laws.  Trebilcock Aff. ¶¶16 & 18.

I.     STANDARD FOR GRANTING TEMPORARY RESTRAINING ORDER.

13.     To be entitled to a temporary restraining order, Mott's must show the following: (1) a substantial likelihood of success on the merits; (2) a substantial threat that the plaintiff will suffer irreparable injury if the injunction is denied; (3) the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) granting the injunction will not disserve the public interest. Sugar Busters LLC v. Brennan, 177 F.3d 258, 265 (5th Cir. 1999); TGI Friday's Inc. v. Great Northwest Restaurants, Inc., 652 F. Supp. 2d 763, 767 (N.D. Tex. 2009). The decision to grant or deny injunctive relief is left to the sound discretion of the district court. Mississippi Power & Light Company v. United Gas Pipe Line Company, 760 F.2d 618, 621 (5th Cir. 1985).

II.     MOTT'S IS LIKELY TO SUCCEED IN DEMONSTRATING THE DEFENDANTS ARE DILUTING THE MOTT'S MARK.

14.     By creating labels bearing the Mark and by encouraging the placement of these labels on Mott's products, Defendants are diluting and/or infringing the Mark and that conduct should be enjoined.    Davidoff v. CVS, 571 F.3d 238 (2nd Cir. 2009) (affirming injunction against sale of product with altered labels).

---

15.    Section 43(c) of the Lanham Act provides that "the owner of a famous mark that is distinctive ... shall be entitled to an injunction against another person who ... commences use of a mark ... in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury." 15 U.S.C. § 1125(c)(1).    Similarly, Texas state dilution law prevents acts that tarnish trademarks, however, a mark only needs to be distinctive (not famous) as opposed to famous. Express One Int'l, Inc. v. Steinbeck, 53 S.W.3d 895, 899 (Tex App.-Dallas 2001, no pet.).

### A.    THE MOTT'S MARK IS FAMOUS AND DISTINCTIVE.

16.    Through its certificates of registration, pleadings and the Trebilcock Affidavit, Mott's has introduced evidence demonstrating that the MOTT'S mark is famous.  The Mark has been in use for over 160 years, and Mott's spends millions of dollars advertising and promoting Mott's products bearing the Mark. Trebilcock Aff. ¶¶ 3 & 5.    For example, in 2009 alone, Mott's spent over $22,000,000 in advertising and promoting the Mark.  Trebilcock Aff. ¶5.  Thus, there is no question that the Mark is distinctive and has become famous.

### B.    DEFENDANTS' USE OF THE LABELS "IN COMMERCE" TARNISHES THE MARK.

17.    Trademark dilution is the weakening of the ability of a mark to clearly and unmistakably distinguish the source of a product.  Horseshoe Bay Resort Sales Co. v. Lake Lyndon B. Johnson Improvement Corp., 53 S.W.3d 799, 812 (Tex. App.-Austin 2001, pet. denied).  Dilution may occur through blurring or tarnishing. 15 USC § 1125 (c)(1).

18.    Tarnishing of a mark occurs when the mark is "portrayed in an unwholesome or unsavory context," Scott Fetzer Co. v. House of Vaccums Inc., 381 F.3d 477, 489 (5th Cir. 2004) (citing) Hormel Foods Corp. v. Jim Henson Productions, 73 F.3d 497, 507 (2d Cir. 1996)

(quoting <u>Deere & Co. v. MTD Prods., Inc.</u>, 41 F.3d 39, 43 (2d Cir. 1994)). The dilution theory grants protection to strong, well-recognized marks even in the absence of a likelihood of confusion, if defendant's use is such as to be likely to diminish or dilute the strong identification value of the plaintiff's mark even while not confusing customers as to source, sponsorship, affiliation or connection. 4 J.T. McCarthy, <u>McCarthy On Trademarks</u>, § 24:72. "The sine qua non of tarnishment is a finding that plaintiff's mark will suffer negative associations through defendant's use. <u>Hormel Foods</u>, 73 F.3d at 507.

19.     In this case, there is no question that the entire purpose of Defendants' conduct is to tarnish the famous MOTT'S trademark.   Defendants' labels are intended for "use in commerce" in that the labels have been printed for the purpose of being placed on Mott's product which are in retail stores.   Defendants' labels are intended to create a negative consumer impression regarding Mott's based on the income received by Mott's parent company and its CEO.    Trebilcock Aff. ¶11, Exhibit 3.   Further, the labels advertise Defendants' web site www.nobadapples.org, which contains a variety of negative information regarding Mott's.   Thus, Defendant's use of the Mark is specifically and expressly calculated to create a negative association regarding the Mark. Defendants' actions constitute trademark dilution in violation of the Lanham Act and Texas State Anti-Dilution law and should be enjoined. <u>Chemical Corp. of America v. Anheuser-Busch, Inc.</u>, 306 F.2d 433 (5th Cir. 1962) (affirming injunction against use of "Where there's life...there's bugs" slogan because of unsavory connotations created by slogan with respect to BUDWEISER beer).

III.    <u>DEFENDANTS' USE OF THE MARK CONSTITUTES TRADEMARK INFRINGEMENT.</u>

20.     Defendants' use of the Mark on labels to be affixed to Mott's products also constitutes trademark infringement.  When consumers see Defendant's labels attached to Mott's

4453641.3
31087.2226

products they are likely to believe that Mott's is providing a coupon or an on-pack promotion. Thus, Defendants' actions cause initial interest confusion and trademark infringement in violation of the Lanham Act.

21.    Section 32(1) of the Lanham Act provides, in part, that "[a]ny person who ... without the consent of the registrant ... use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods [that] is likely to cause confusion, or to cause mistake, or to deceive ... shall be liable in a civil action." 15 U.S.C. § 1114(1).

22.    In order to prevail on the merits, a plaintiff must establish that: (1) it has a protectable trademark, and (2) a likelihood of confusion exists as to the origin of defendants' products. Paddington Corp. v. Major Brands, 359 F.Supp. 1244, 1251 (W.D. Okla. 1973) (obscuring label constitutes trademark infringement).

23.    While a consumer--once he or she has read the Defendants' label—may recognize that the label is not associated with Mott's, trademark infringement can also be based on "confusion that creates initial consumer interest, even though no actual sale is finally completed as a result of the confusion." Elvis Presley Enters., Inc. v. Capece, 141 F.3d 188, 204 (5th Cir. 1998).

24.    In this Circuit, the determination of likelihood of confusion has traditionally turned upon consideration of certain factors. These were known in earlier cases as seven "digits-of-confusion," see Sicilia Di R. Biebow & Co. v. Cox, 732 F.2d 417, 430 (5th Cir. 1984); B.H. Bunn Co. v. AAA Replacement Parts Co., 451 F.2d 1254, 1262 (5th Cir. 1971) ("we think of this case as a series of digits to be added together"), and have now evolved into these eight factors: (1) strength of the plaintiff's mark, (2) similarity of design between the marks, (3) similarity of

the products, (4) identity of retail outlets and purchasers, (5) similarity of advertising media used, (6) the defendant's intent, (7) actual confusion, and (8) the degree of care exercised by potential purchasers. Oreck Corp. v. U.S. Floor Systems, 803 F.2d 166, 170 (5th Cir. 1986), cert. denied, 481 U.S. 1069, 107 S. Ct. 2462, 95 L. Ed. 2d 871 (1987). The elements are recognized in this Circuit as being non-exclusive. See, e.g., Conan Props., Inc. v. Conans Pizza, Inc., 752 F.2d 145, 149 (5th Cir. 1985). No one factor is dispositive, and different factors will weigh more heavily from case to case depending on the particular facts and circumstances involved. Marathon Mfg. Co. v. Enerlite Prods. Corp., 767 F.2d 214, 218 (5th Cir. 1985) (per curiam). The party suing for infringement need not support a claim by a majority of the factors. Armco, Inc. v. Armco Burglar Alarm Co., 693 F.2d 1155, 1159 (5th Cir. 1982).

25.     In this case, however, Mott's can (and does) show that it will almost certainly prevail on the merits at trial because it has a strong trademark and Defendants' labels—placed and to be placed on Mott's actual products—will cause initial interest confusion.

26.     Here, there is no question that the analysis of likelihood of confusion should be resolved in Mott's favor:

- The MOTT'S mark is strong;

- The marks are identical, in that Defendants are using the MOTT'S mark and affixing it to genuine Mott's product;

- The products are identical;

- The retail outlets and purchasers are identical; and

- Defendants' intend the labels to be used on genuine Mott's packaging.

27.    Even though a consumer may ultimately read Defendants' label and not be confused that Defendants are associated with Mott's "[i]nfringement can be based upon confusion that creates initial consumer interest, even though no actual sale is finally completed as a result of the confusion." Elvis Presley Enterprises, supra at 204, quoting 3 McCarthy § 23:6. No sale must be completed to show actual confusion.  Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc., 109 F.3d 1394, 1405(9th Cir. 1997) (cited with approval by Elvis Presley Enterprises).

## IV.    THERE IS A SUBSTANTIAL THREAT OF IRREPARABLE HARM.

28.    "An irreparable injury is one that cannot be remedied by an award of economic damages." Lennar Pacific Prop. Mgmt., Inc. v. Dauben, Inc., 2007 U.S. Dist. LEXIS 60414 at *6; citing Deerfield Medical Center v. City of Deerfield Beach, 661 F.2d 328, 338 (5th Cir. 1981).  In other words, "injury that cannot be undone through monetary remedies." United States of America v. MBank Abilene, N.A., 1986 U.S. Dist. LEXIS 18592 *17 (N.D. Tex., October 24, 1986) relying on Enterprise Intern. v. Corporation Estatal Petrolera, 762 F.2d 464, 472 (5th Cir. 1985) citing Deerfield Medical Center, 661 F.2d at 338.

29.    In trademark cases, since a plaintiff's goodwill and reputation is at stake, irreparable harm is often presumed. Paulsson Geophysical Servs. v. Sigmar, 529 F.3d 303, 312 (5th Cir. 2008).   Whether or not there is a presumption, since Defendants' conduct is taking away Mott's ability to control its use of the MOTT'S mark as well as control over the labeling of its products, there no question that Defendants' acts pose substantial threat of irreparable harm to Mott's warranting an injunction. Id. (upholding injunction, finding that loss of control over quality of the technology associated with trademark posed substantial threat of irreparable harm). Trebilcock Aff. ¶¶ 13-16.

---

## V.   THE THREATENED INJURY OUTWEIGHS ANY HARM TO THE DEFENDANTS.

30.    In this case the irreparable harm being suffered by Mott's clearly outweighs whatever damage Defendants could claim as a result of an injunction.  Indeed, it is hard to imagine what, if any, harm to Defendants an injunction will cause.  Defendants will only be prevented from violating Federal and State laws that prohibit tampering with labels of food products.  Certainly, if Defendants suffer any harm, it would not be irreparable, TGI Friday's, Inc. v. Great Northwest Rests., Inc., 652 F. Supp. 2d 763, 772773(N.D. Tex. 2009) (irreparable harm outweighs money damage).

## VI.   THE PUBLIC INTEREST WILL BE SERVED IN PROTECTING MOTT'S FOOD AND BEVERAGES FROM TAMPERING.

31.    Finally, Mott's must show that granting the injunction will not disserve the public interest.  See TGI Friday's, Inc., 652 F. Supp. 2d at 767.  In conducting this analysis, the court determines whether broad public interests are disserved by the entry of the requested injunctive relief.  Id. at 773.    Here, there is unquestionably a public interest in avoiding tampering with food and beverage labels.  This is why Federal Anti-Tampering Laws, 18 USC § 1365 and Section 431.021 of the Texas Health and Safety Code exist—precisely to prevent alteration of food and beverage labels.  Moreover, the public interest is served by protecting Mott's trademark rights. See TGI Friday's, Inc., 652 F. Supp. 2d at 773.

## VII.   DEFENDANTS' CONDUCT IS NOT SHIELDED BY THE NORRIS-LAGUARDIA ACT.

32.    To the extent Defendants are engaged in labor activities, such activities are protected under the Norris-LaGuardia Act. That statute "expresses a basic policy against the injunction of the activities of labor unions." Int'l Ass'n of Machinists v. Street, 367 U.S. 740, 772, 81 S.Ct. 1784, 6 L.Ed.2d 1141 (1961) (citing 29 U.S.C. § 101).  The Norris-LaGuardia Act

---

was intended, however, to leave the federal courts free to enjoin unlawful acts "which an unsluggish public conscience and a healthy social order cannot soundly tolerate." International Ass'n of Bridge, Structural & Ornamental Iron Workers v. Pauly Jail Bldg. Co., 118 F.2d 615, 617 (8th Cir.1941). Nothing in the Norris-LaGuardia Act denies to federal courts the power to enjoin criminal acts simply because they may be committed by persons seeking to forward or interested in some labor-related objective. 29 U.S.C. § 107(a); Scott v. Moore, 680 F.2d 979, 986 (5th Cir. 1982); rev'd on other grounds United Broth. of Carpenters and Joiners of America, Local 610, AFL-CIO v. Scott, 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983). And, indeed, the Norris-LaGuardia Act should not shield Defendants' conduct here.

33. Injunctions have been granted against unlawful union activity when there is no other way to stop that activity, an injunction is appropriate. Burlington Northern & Santa Fe Railway Company v. Brotherhood of Maintenance of Way Employees, 286 F.3d 803, 807 (5th Cir. 2002) (enjoining surprise strikes that implicated the public interest and commerce); San Antonio Community Hospital v. Southern California District Counsel of Carpenters, 125 F.3d 1230, 1237 (9TH Cir. 1997)(enjoining publication of banner at hospital that said "THIS MEDICAL FACILITY IS FULL OF RATS" as the type of fraud not exempt from injunctions).

34. In this case, Defendants' tampering of food and beverage labels have gone way beyond the type of union activity that our society can tolerate. Defendants are actively engaged in tampering with, and encouraging others to tamper with, food and beverage products in grocery stores throughout the United States. Grocery stores in this District sell Mott's products and are, therefore, a target of the wrongful conduct. In addition to harming Mott's through tarnishment and infringement is engaging in the unlawful tampering of food and beverage products that is harming the public and must be enjoined.

# IV.
## CONCLUSION

35.     For the above stated reasons, Mott's respectfully requests that this honorable Court grant Mott's application for a temporary restraining order preventing Defendants from placing labels on Mott's food and beverage products as well as printing, publishing, distributing and advertising the use of such labels.

Respectfully submitted,

By: _____
Richard A. Illmer
State Bar No. 10388350
rillmer@mailbmc.com
Chad A. Johnson
State Bar No. 24026259
cjohnson@mailbmc.com

**BROWN MCCARROLL, L.L.P.**
2001 Ross Avenue, Suite 2000
Dallas, Texas 75201
(214) 999-6100
(214) 999-6170 *facsimile*

Bart A. Lazar
blazar@seyfarth.com
**SEYFARTH SHAW, LLP**
131 S. Dearborn Street, Suite 2400
Chicago, Illinois 60603
(312) 460-5986
(312) 460-7986 *facsimile*

**ATTORNEYS FOR PLAINTIFF
MOTT'S LLP**